[Civ. No. 348.   Third Appellate District.—September 24, 1907.]

## DOROTHEA BECKER, Formerly DOROTHEA SCHWERDTLE, Appellant, v. JOHN GEORGE SCHWERDTLE, Respondent.

ACTION BY MOTHER TO COMPEL RECONVEYANCE FROM SON—RECITAL IN DEED—EXPECTATION OF DEATH—FRAUD—SUPPORT OF FINDINGS.— In an action by a mother to enforce a trust in real property conveyed by her to a son and to compel a reconveyance, where the court found upon the issues that the deed was delivered by her to him in consideration of love and affection, and for the better support of the grantor as recited therein, that it was not delivered in expectation of death with the understanding that it should take effect only in case she did not recover from serious illness, and that it was not procured by any fraudulent promise of the grantee made without intention of performing it, where there is any substantial evidence to support the findings, they cannot be disturbed upon appeal.

ID.—EFFECT OF CONVEYANCE—WANT OR FAILURE OF CONSIDERATION— PARENT AND CHILD—INVALIDITY NOT PRESUMED.—A deed executed and acknowledged and delivered to the grantee conveying land in fee simple is a solemn civil act which cannot be reclaimed at pleasure. It is not void for want or failure of pecuniary consideration. The mere fact that it is from a parent to a child cannot change the rule or make the deed presumptively invalid.

ID.—CIRCUMSTANCES MAY CHANGE BURDEN OF PROOF—BURDEN SUSTAINED.—Circumstances may be such as to cast the burden of proof upon the child to show that the deed was freely and voluntarily executed by the parent, with intent to vest title in him absolutely. *Held,* that if it be assumed that such burden of proof was cast upon the son in this case, the evidence is sufficient to sustain it.

ID.—IMMATERIAL FINDINGS NOT SUSTAINED.—Where all the material facts are found in favor of the son upon sufficient evidence, the fact that immaterial findings are not sustained by the evidence cannot affect the judgment.

ID.—MORAL OBLIGATIONS NOT ENFORCEABLE.—Neither courts of equity nor courts of law have a right to enforce mere moral obligations.

APPEAL from a judgment of the Superior Court of Sacramento County.   Peter J. Shields, Judge.

The facts are stated in the opinion of the court upon this appeal, and upon the former appeal reported in *Becker* v. *Schwerdtle,* 141 Cal. 386, 74 Pac. 1029.

A. L. Shinn, for Appellant.

A deed of real property delivered in expectation of death creates a trust upon recovery, and reconveyance will be compelled upon recovery. (*Kimball* v. *Tripp,* 136 Cal. 631, 68 Pac. 428; *Curtis* v. *Barrus,* 38 Hun, 165; *Forshar* v. *Welsby,* 30 Beav. 243; *Houghton* v. *Houghton,* 34 Hun, 212; *Emory* v. *Clough,* 63 N. H. 552, 56 Am. Rep. 543, 4 Atl. 796; Thornton on Gifts and Advancements, sec. 112; *Meach* v. *Meach,* 24 Vt. 591; *Allore* v. *Jewell,* 94 U. S. 506.) A betrayal of confidence will create a constructive trust when the relations are confidential, which equity will enforce. (*Jacox* v. *Jacox,* 40 Mich. 473, 29 Am. Rep. 547; *Van Donge* v. *Van Donge,* 23 Mich. 321; *Brison* v. *Brison,* 75 Cal. 525, 7 Am. St. Rep. 189, 17 Pac. 689, 90 Cal. 323, 27 Pac. 186; *Hays* v. *Gloster,* 88 Cal. 560, 26 Pac. 367; *Butler* v. *Hyland,* 89 Cal. 577, 26 Pac. 1108; *Ross* v. *Conway,* 92 Cal. 632, 28 Pac. 785; *Jackson* v. *Jackson,* 94 Cal. 446, 29 Pac. 957; *Hayne* v. *Hermann,* 97 Cal. 259, 32 Pac. 171; *White* v. *Warren,* 120 Cal. 322, 49 Pac. 129, 52 Pac. 723; *Odell* v. *Moss,* 130 Cal. 352, 62 Pac. 555; *Jones* v. *Jones,* 140 Cal. 587, 74 Pac. 143; *Gatze* v. *Armstrong,* 145 Cal. 370, 78 Pac. 872; *More* v. *More,* 133 Cal. 489, 65 Pac. 1044.)

A. M. Seymour, and D. L. Donnelly, for Respondent.

The facts found and proved render appellant's authorities inapplicable. The deed must be sustained. (*Tillaux* v. *Tillaux,* 115 Cal. 663, 47 Pac. 691; *Soberanes* v. *Soberanes,* 97 Cal. 140, 31 Pac. 910; *Becker* v. *Schwertle,* 141 Cal. 386, 74 Pac. 1029; Pomeroy's Equity Jurisprudence, sec. 162, and cases cited; *Bowdoin College* v. *Merritt,* 75 Fed. 480; Devlin on Deeds, secs. 284, 314.)

BURNETT, J.—A demurrer to the second amended complaint was sustained by the trial court without leave to amend. A judgment of dismissal followed. From this judgment an appeal was taken to the supreme court and the judgment was reversed. The case is reported in *Becker* v. *Schwerdtle,* 141 Cal. 386, [74 Pac. 1029], to which we refer for a full state-

ment of the averments of the complaint. The cause was tried and judgment rendered for defendant, from which plaintiff appealed.

Quite a number of propositions are learnedly discussed by appellant, but the one vital and controlling question is whether the deed from plaintiff to defendant was delivered in consideration of love and affection and for the better support of the grantee, as recited in said instrument, or in expectation of death with the understanding that it should take effect only in case plaintiff did not recover from the grave illness from which she was suffering at the time the deed was delivered; or, lastly, was said deed secured by a fraudulent promise on the part of defendant made without any intention of performing it and with the intent to deceive plaintiff and thereby induce her to execute the conveyance.

The trial court found that the consideration was as mentioned in the deed, and, in effect, that there was no fraud and said deed was not delivered in expectation of death. We, of course, are bound by the finding if there is any substantial evidence in its support. In *Tillaux* v. *Tillaux,* 115 Cal. 667, [47 Pac. 691], the supreme court, speaking through Mr. Justice McFarland, said: "A deed by the owner of land duly signed and acknowledged by him and delivered to the grantee, conveying the land to the latter in fee simple, is one of the most solemn of civil acts. It is not a thing to be played with, or reclaimed at pleasure, as a hawk in falconry. It is not void on account of either want or failure of consideration; nor does want or failure of consideration raise a resulting trust."

The mere fact that the conveyance is from parent to child does not change the rule nor render the deed presumptively invalid. (Pomeroy's Equity Jurisprudence, sec. 962; *Bowdoin College* v. *Merritt,* 75 Fed. 488.) However, under certain circumstances, the burden is upon the grantee to show that a deed from his parent was obtained without fraud or undue influence. The doctrine is announced in *Soberanes* v. *Soberanes,* 97 Cal. 145, [31 Pac. 910], through Mr. Justice Paterson, as follows: "Some of the cases hold that undue influence is not to be inferred from the relation of parent and child where the gift is from the parent to the child (*Millican* v. *Millican,* 24 Tex. 446) ; but when the parent is of great age, or is enfeebled by disease, and conveys his entire estate to one child, to the exclusion of other children dependent upon his

bounty, the burden is unquestionably upon the donee to show that the gift was made freely and voluntarily and with full knowledge of all the facts and with perfect understanding of the effect of the transfer.''

In the case at bar it cannot be said that the grantor was of great age—although she was sixty-four. She was, though, somewhat enfeebled by disease, and she conveyed all her property to an only child, to the exclusion, however, of a grandchild. But the evidence seems clear that her mental faculties were unclouded, and there is no question that she understood the effect of a transfer of her property. If we assume that under the peculiar circumstances of the transaction the burden was cast upon the grantee to show that the conveyance was made freely and voluntarily and with the intention to vest the title immediately and irrevocably in him, still we would not be justified in disturbing the judgment of the lower court, because there is sufficient evidence in behalf of respondent's contention to sustain that burden and support the corresponding finding.

It appears that plaintiff was living apart from her second husband, and in order to prevent him from securing or succeeding to any of her property, she had determined and expressed her intention to convey it to respondent. Accordingly, some six months before the deed was delivered, she signed and acknowledged it; but she retained it in her possession until the time of her illness aforesaid. In testifying as to what occurred at the time of the delivery of the deed and as to the consideration that moved her, among other things she said: ''I told him when I gave him over the bank account I wanted that turned back again, if I would get better, just as I gave it to him, and the deed, I told him, if I got better, I wanted twenty dollars a month for my support; he did not say anything at all to me; at the time of the delivery of the deed I was sure he would comply with the request or conditions which I expressed at the time. . . . The reason I made that deed down there that day, I did not want Becker to have any of the property my husband left me; I wanted it to go to my son—he to look out for this niece; at the time I gave the deed to Johnnie I relied upon my belief that he would pay twenty dollars a month in case I got well; . . . the only reason I gave him the deed was because I thought I was going to die, and I wanted him to have my property;

6 Cal. App.—30

I thought he had a right to it when I was through with it; because he would look out for my granddaughter was part of the consideration; when Johnnie got the deed I told him if I got better I expected $20.00 a month for my support; that is all I said, I am positive.'' She further said in answer to direct questions on cross-examination that she deeded the property to respondent because he was her son and because of her love and affection for him and because she did not want Becker to have any of the property. From the foregoing it is fairly inferable that she intended to have the title vest in her son at the time the deed was delivered free from any trust or condition whatever. That the deed was not delivered in ''expectation of death'' is disclosed by her declaration that if she got better she expected $20 a month for her support. She gave no intimation that the deed was to be held in trust or that the property was to be reconveyed in case of her recovery. Accepting her testimony as true, a fair interpretation of her acts and declarations at the time the deed was delivered amounts to this: She believed she was going to die. Her intention was that the son should have the real property in any event, but in case she recovered she expected him to pay her $20 a month. While at the time she delivered the deed she may have believed that she would not recover, it does not follow necessarily that in contemplation of law the deed was delivered in expectation of death or that it can be defeated upon her recovery. As said by the supreme court in *Carty* v. *Connolly*, 91 Cal. 21, [27 Pac. 599], through Mr. Justice Garoutte: ''It is not a question of physical condition, of pain or absence of pain, of long life or short life, but it is a question of mental capacity and the free and untrammeled action of the mind. These are the ultimate facts, and the belief existing in the grantor's mind that he is suffering from a mortal illness is but an incident throwing whatever light it may possess upon the solution of the ultimate facts, and the power and brightness of that light will fluctuate with the varied circumstances and surroundings of each particular case.''

Granting that plaintiff at the time she delivered the deed believed she would not recover and that section 1150, Civil Code, applies to a voluntary conveyance of real property as well as to a transfer of personal property, still there was suffi-

cient adverse evidence to overcome the presumption that the conveyance was made "in view of death."

The only other consideration in this connection meriting attention relates to the question of fraud in securing the deed. The contention of appellant is that respondent, in order to induce his mother to convey him the property, and with the intent to deceive her and without any intention of performing his agreement, promised to pay her $20 a month. But giving full credit to the testimony of plaintiff, it is manifest that no express promise was made; it is at least doubtful whether anything was said about the money until after the deed was delivered, and, conceding that there was an implied agreement to pay, it is not clear that the evidence would support a finding that he did not intend at the time to keep his promise. But we are required also to look at that part of the evidence most favorable to respondent's contention. We find that defendant testified to facts from which the conclusion follows that no fraud whatever was committed. He says that nothing was said about money, that his mother insisted upon his taking the deed and recording it, although he declared he did not want the property, and he further declared his mother made statements indicating her belief that she would recover from her illness. There are other circumstances which we deem it unnecessary to detail, tending to show that the deed was delivered freely and voluntarily and with intention to vest the title absolutely in the grantee. For us to disturb the finding as to the character of the transfer would be to usurp the prerogative of the trial court.

Certain other findings are assailed as not supported by and as opposed to the evidence. For instance, it is claimed that the evidence does not warrant the conclusion that "plaintiff did not repose the greatest confidence and trust or any confidence or trust in defendant and that plaintiff did not believe that defendant would deal justly and fairly with the plaintiff in all things or in anything"; or again that "plaintiff became very ill, but was not enfeebled in mind or body, and that plaintiff did not fully believe or believe at all that she would not recover from said illness"; or "that the plaintiff did not fully believe or believe at all that defendant would pay plaintiff the sum of $20 per month, or any other sum, or that defendant would *comply with any request* that plaintiff might make." It is clear that the mother *did* place some

trust and confidence in her son, and it is only charitable to conclude that she believed he *would* deal fairly and justly with her. And it seems almost incredible that any mother, under such circumstances, should believe that her son would not comply with any request that she might make.

Again, it is true that the plaintiff "became very ill," but it is not true that she "was not enfeebled in body."

But as to these findings and some others which are assailed it is sufficient to say they become immaterial in view of the conclusion of the court as to the consideration for the deed and the absence of fraud in the transaction. For, whatever might be the finding upon the other issues, if the deed was delivered voluntarily for love and affection and with the free and untrammeled intent to vest the title in the grantee—and it is in effect so found—then the judgment must be for defendant. It must be admitted that defendant was quite reckless in the preparation of his findings. He seemed afraid to have any of the controverted allegations of the complaint found to be true. It may be that this was to maintain consistency in view of the strange denials of his answer, among which is the following: "And further denies that defendant now claims to be the owner in fee of said real property under or by virtue of said deed." It is obvious that he did claim under said deed, and by virtue thereof the judgment was in his favor. However, no notice of this denial was taken by counsel either here or in the court below, and we simply advert to it to point the moral that greater consideration should be paid to the accuracy of verified statements.

Objections were made to certain rulings of the court during the trial. We have examined them, and, conceding that some of them were erroneous, it is obvious that they were not prejudicial to the substantial rights of the plaintiff. The moral consideration arising from such transaction between mother and son is pressed upon our attention in favor of appellant. But, as said in *Soberanes* v. *Soberanes, supra:* "Transactions of the kind in question should be thoroughly sifted, but a voluntary deed, free from any imputation of undue influence, executed by a mother with her eyes open, cannot be set aside merely upon the ground that an honorable man would not accept a gift which strips his mother of all her property and leaves her dependent upon the charity of others." And again: "Neither courts of equity nor of law have a right to

enforce mere moral obligations." But, however unfilial the conduct of respondent may appear, and however shocking to a fine sense of honor, in extenuation it should be said that he returned nearly $2,000 to his mother and he also testified that he furnished her a home as long as she would live with him.

At any rate, we see no legal cause to disturb the judgment, and it is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 21, 1907.